SCHOLL ET AL. *v.* STERKEL ET AL.

(Decided September 26, 1933.)

*Mr. C. H. Henkel, Mr. Lewis Brucker* and *Mr. F. S. Culp,* for plaintiffs in error.

*Mr. Wm. F. Voegele* and *Mr. N. M. Wolfe,* for defendants in error.

SHERICK, P. J. Error is prosecuted to this court by the plaintiffs below, Joseph Scholl and others, who here seek a reversal of a judgment entered on the verdict of the jury sustaining the last will and testament of Jacob Scholl. It is claimed that error, prejudicial to the rights of the plaintiffs, intervened in the trial of this cause, and that thereby justice has not been rendered. The specifications of error are eight in number, and will be hereinafter separately considered.

This will, its execution and attestation, present several unusual features, not common to most will contests. In the first place, the will purports to have been executed on June 14, 1914, while the attestation clause signed by the subscribing witnesses bears date of June 10, 1914. It is claimed that the will is a forgery; and it is claimed that one of the subscribing witnesses never signed the will as an attesting witness, and so testified, and that he neither saw the testator sign the will nor heard him acknowledge it as his will. This fact is disputed by the other subscribing witness and the three sisters of the testator, who were present at the will's execution and who are beneficiaries thereunder.

Two further circumstances are of importance. The will has twice been admitted to probate. Its first admission has been set aside; the reason therefor appearing in *Scholl* v. *Scholl,* in 123 Ohio St., 1, 173 N. E., 305. In the files of the probate court pertaining to the will's first admission to probate is a paper signed by the protesting attesting witness, which recites the will's execution and his attestation, which he now denies, and to which paper he now says he never was sworn. The judge of that court testifies in this cause to the contrary. This document appears as one of the exhibits attached to the record before us. It is known as Plaintiff's Exhibit A-3 and Defendant's Exhibit C.

The second circumstance is to be found in the second order of probate. By reason of the protesting attesting witness's refusal to participate in the second pro-

ceeding to probate, the court heard other evidence than that of the other attesting witness; and the order of probate made contains other matter and things not usually appearing in an order of probate.

The first claimed error arises at the trial's inception. It is here urged that, when the court permitted the second order of probate to be read to the jury, the provisions of Section 12085, General Code, were exceeded, that the unusual recitals contained in the second order of probate were incompetent and destroyed the *prima facie* case made by the statute's provision, and that therefore the plaintiffs' motion for a directed verdict then made on the ground that there was no *prima facie* case should have been sustained. The case of *Parsons* v. *Wass,* 16 C. C. (N. S.), 404, 31 C. D., 577, is advanced as authority for this contention.

We find the answer to the question made appearing on page three of the record. Therein the trial court stated: ''The jury will understand the recitations in the journal entry, which is the order of probate, will have no effect in this case; it is merely the part that admits the will to probate that makes a *prima facie* case, and the other matters have nothing to do with this case, and the jury should not consider it. * * * The fact it is admitted to probate, whether correctly or incorrectly, raises a *prima facie* case as to the validity of the will, and the jury will take it for that purpose, and for that purpose only.''

We take the view that the court's instruction to the jury concerning this order of probate correctly limited its evidential purpose and value, and the prejudice claimed by the journal's admission in its entirety did then disappear. It seems to this court that, if the plaintiffs felt grieved thereby, their proper course should have been a motion to withdraw a juror and a continuance of the cause.

The second assignment of error lies in the court's refusal to give plaintiffs' special request No. 1 before

argument. It reads as follows: ''The will purports on its face to show that it was signed by the testator on the fourteenth day of June, 1914, and also purports to show that the witnesses signed on the tenth day of June, 1914. I charge you that if you should find that the instrument was signed and executed on the dates above set forth, that the will should be invalid and void, and if you should so find, your verdict should be that the purported will is not the last will of Joseph Scholl, deceased.''

In order to determine the propriety of this request, we of necessity are driven to a perusal of the evidence offered in this trial. We find from the testimony of the attesting witness who aids the proponents of this will and the three sisters present at the will's execution that the signing and witnessing of the will was one contemporaneous act occurring on the same day. We take notice of the fact that June 14, 1914, fell on Sunday, and that this attesting witness says that he had been called from his work in his working clothes, and that therefore the day could not have been Sunday. This testimony does establish the fact that the will was executed on the 10th of June, and that its execution and attestation were contemporaneous acts. The will in question was in the handwriting of the testator, and any presumption that the date of the will as written therein was the true date thereof was dispelled by this positive testimony to the contrary, and the testimony of these four witnesses clearly convinces us that the insertion of the figures ''14'' was but a mistake of the scrivener, perhaps induced by the fact that it was the year 1914.

Request No. 1 presupposes that the will is invalid because of the discrepancies in dates. This the proponents fully explain. And now, further searching the record, we find no iota of testimony supporting the contestants' claim that the will's execution and attestation were not contemporaneous. The uncontroverted

facts therefore clearly establish that the discrepancy in dates was but a mistake, the presumption was dispelled as previously found, and no disputed fact thereon remained in the case on the question made, and hence the request, not being responsive to or bearing upon an issue in the case, was correctly refused.

It is urged as the third ground of error that the court improperly refused to give plaintiff's special request No. 3, couched in the following language: "If the contestants adduce credible proof that the will offered for probate is a forgery, then the jury can not longer entertain the presumption that a subscribing witness in testifying that it was duly executed told the truth merely because such witness was not directly impeached, but the jury must determine the issue from all evidential facts considered in their proper light, in connection with the plea that the will is genuine and with the charge of forgery."

This charge is molded upon the wording of paragraph 7 of the syllabus of *O'Connor* v. *Slaker, Admr.*, (paragraph 8 of the syllabus as reported in 12 A. L. R., 199), 105 Neb., 88, 179 N. W., 401. This case has been carefully examined.

We are unable to understand the reasons assigned why this charge should be given. The contestants in the assertion of this claimed error italicize the following: *"The testimony of Barney Brogan, one of the purported witnesses to the will, shows that he never signed the will and that his name is a forgery."*

They then further say that, in view of this testimony, plaintiff's request No. 3 should have been given. The case relied upon shows that the attesting witnesses took the stand and testified as to the due execution of the will. In the case now before us, Brogan was called as a witness and denied its due execution, but the other attesting witness, Kempf, when called as a witness in this case, testified to the will's due execution and attestation. Now, considering this request to charge, we

note that it states that, when proof has been adduced of forgery, "then the jury can not longer entertain the presumption that a subscribing witness in testifying that it was duly executed told the truth merely because such witness was not directly impeached."

We know of no presumption in this state fastened to the testimony of a subscribing witness to a will when called upon in open court in a will contest to testify as to the execution of the will; the charge as given rather refers to the testimony of Kemp than to that of Brogan. A subscribing witness's testimony so given is subject to the same rules that apply to any other witness in the case.

The only sanctity that surrounds the testimony of a subscribing witness to a will in this state, if any there be, pertains to the statutory provision that the will and the order of probate when offered in evidence at the beginning of a will contest establish a *prima facie* case. This endures throughout the trial of the case.

It is our conclusion that the charge requested does not correctly state the law and is misleading and should not have been given.

The fourth error presented is in the court's refusal to give plaintiffs' special request No. 5, which states the law as follows: "In determining the value and weight to be given to the evidence of the defendants, Martha Scholl, Anna Scholl, Helen Scholl Sterkel, Elizabeth Scholl and Justine C. Sterkel, you will consider the bias and the prejudice they may have, if any, and you may also consider the interest they may have in the outcome of the controversy."

It is the jury's province to consider the credibility of all the witnesses in an action and to weigh their testimony and consider their respective interests, their bias and prejudice; and this is the instruction given to every jury. But we know of no rule of law that would permit a litigant to pick out certain nonexpert opposing witnesses for the purpose of having a court cau-

tion a jury by special request before argument to view their testimony in the light of their interest therein or their bias and prejudice. If this were countenanced, a jury might rightfully assume that the trial judge had grave doubt as to the veracity of these chosen few. He might influence a juror's judgment and invade the province of determining the credibility of a witness by inference or insinuation deducible therefrom. In this field a court may play no part. Such has been the repeated holding of the courts of this state. The trial court's duty to so charge generally in his general charge is likewise well established. To permit such a request as here made to be given before argument would be to accentuate and repeat the instruction. Might we suggest that repetition by a court in his charge to a jury, upon an issue or a duty therein, has been held in more than one instance an unwarranted emphasis prejudicial to the rights of a litigant jeopardized and injured thereby.

The fifth error assigned is the court's refusal to give plaintiffs' special request No. 6, which immediately follows: "Every last will and testament must be in writing and must be signed at the end by the party making it, and be attested and subscribed in the presence of such party by two or more competent witnesses who saw the testator subscribe or heard him acknowledge it. The signature of the testator and that of the witnesses must be subscribed at one continuous transaction."

This request does not correctly state the law. A nuncupative will need not be in writing. The real fault, however, is to be found in the last sentence. Section 10504-3, General Code, provides that the attesting witnesses must see the testator sign or hear him acknowledge the same. We know of no rule that the witnesses must see the testator sign. He may sign his will and thereafter call upon witnesses to attest the

same. If such be done, they must hear him acknowledge it as his will.

The court's refusal to give plaintiffs' special request No. 8 is asserted as the sixth ground of error. It is as follows: "The court further instructs you that the testimony of the handwriting experts that a purported will offered for probate is a forgery, if based on sound reasons and circumstances supporting that theory or opinion, may be sufficient to overthrow the testimony of subscribing witnesses that they saw the will executed."

By this request to charge the plaintiffs again seek to pick out a certain witness and lay undue stress upon his veracity; and what has been said respecting request No. 5 might here again be profitably repeated. This request is further unfair, in that it disregards the testimony of some three other witnesses who say that they saw the testator sign and acknowledge his will. Let us assume that a testator signed his will in the presence of a company of people competent to act as witnesses to his will, and that two of them did so attest and afterwards denied that they saw the testator sign or heard him acknowledge his will, and also denied their own signature as witnesses, surely in such case the other witnesses to the making of the will, who did not subscribe, would not be valueless on that question. In view of such witnesses in this action, this request is unfair, and infers that the proponents must fail if the remaining subscribing witness is discredited by expert testimony.

The eighth ground of error claimed pertains to the admission in evidence at the request of the proponents of the document previously referred to as Defendants' Exhibit (C). It is the questioned affidavit of the attesting witness who now disavows his signature to the will. This paper was competent for two purposes for which it was offered, during the cross-examination of this witness by the defendants, he having been called

in chief by the contestants. It was competent for impeaching purposes and to prove the witness's signature to the will.

We now come to consider the seventh and final ground of error alleged. It is urged that counsel for defendant in his closing argument was guilty of misconduct in referring to the decisions of the two probate judges in admitting the will to probate. Defendants' counsel said in part: "Are you going to say that Judge Bissman was mistaken and Judge McClellan didn't know what he was doing? Are you going to say that it is not a valid will?"

Plaintiffs' counsel argue that the probate judges did not consider any evidence adverse to the probating of the will. This, of course, is true. And they further say that this manner of argument was highly prejudicial. The case of *Wadsworth* v. *Purdy,* 21 C. D., 110, 12 C. C. (N. S.), 8, is advanced as a like instance. It has its point of difference, however; therein it was argued that the will had been admitted to probate on the same evidence heard in the proceedings to contest. This was not true. In the present controversy the words employed rather chide the jury if they should be so presumptuous as to do that which the probate judges failed to do.

We do not approve of the language complained of; it was perhaps erroneous, but we are hesitant to say that it was prejudicially so. The evidence in this case to our notion strongly preponderates in favor of sustaining the will, and we are of the opinion that the jury would have arrived at the same conclusion if the words had not been spoken. The court seems to have concluded the argument for the defense, and in speaking of the first order of probate and the judgment of the Supreme Court the court remarked in the presence of the jury: "Of course, it can't be valid now after it was set aside. I don't think it has much to do with this case. If it was set aside it cannot be valid." It

rather appeals to this court that the defense, in view of the trial court's remark, sustained the worst of the colloquy.

It is the judgment of this court that the judgment be affirmed.

*Judgment affirmed.*

MONTGOMERY and LEMERT, JJ., concur.